Jared Allebest, #13485 (UT) #034640 (AZ) #325086 (CA)
Allebest Law Group PLLC
Attorney for Plaintiffs
212 East Crossroads Blvd #207
Saratoga Springs, Utah 84045
Cell: (801) 900-3858
Videophone: (801) 204-9055
Email: Jared@Allebest.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DEVIN GREEN, an individual and Roes I-X<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF UTAH, a Utah College, MARK HARLAN, individually and in his capacity as Athletic Director of the University of Utah; KYLE WHITTINGHAM, individually and in his former capacity as Head Football Coach of the University of Utah; MARK ATUAIA, individually and in his capacity as Running Backs Coach of the University of Utah; JASON GRECO, individually and in his capacity as Executive Senior Associate Athletic Director for Governance and Brand Strategy; LIZ PRINCE, individually and in her capacity as Associate Athletic Director for Sport Administration and Student-Athlete Wellbeing; JOHN JENTZ, individually and in his capacity as Deputy Athletic Director and Chief Financial Officer; and CHARMELLE GREEN, individually and in her capacity as Deputy Athletic Director and Chief Operating Officer, and ROES I-X.<br><br>Defendants. | VERIFIED COMPLAINT<br><br>Civil No. 2:26-cv-95<br><br>Judge<br><br>Jury Trial Requested |

1

Plaintiff Devin Green ("Plaintiff" or "Devin"), by the undersigned counsel, as and for his Verified Complaint against defendants the University of Utah (the "University"); Mark Harlan ("Harlan"), individually and in his capacity as Athletic Director of the University of Utah; Kyle Whittingham ("Whittingham"), individually and in his capacity as Head Football Coach of the University of Utah during the relevant time period; Mark Atuaia ("Atuaia"), individually and in his capacity as Running Backs Coach of the University of Utah; Jason Greco ("Greco"), individually and in his capacity as Executive Senior Associate Athletic Director for Governance and Brand Strategy; Liz Prince ("Prince"), individually and in her capacity as Associate Athletic Director for Sport Administration and Student-Athlete Wellbeing; John Jentz ("Jentz"), individually and in his capacity as Deputy Athletic Director and Chief Financial Officer; and Charmelle Green ("C. Green"), individually and in her capacity as Deputy Athletic Director and Chief Operating Officer (collectively, the "Defendants" and each a "Defendant"), alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings these claims under the Americans with Disabilities Act at 42 U.S.C. § 12101, et. seq., Section 504 of the Rehabilitation Act of 1973 at 29 U.S.C. § 794, and 42 U.S.C. § 1983.

2. This Court has jurisdiction under 28 U.S.C. § 1331.

3. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(2).  A substantial part of the events giving rise to the Plaintiff's claims occurred within the District of Utah, and the University is a resident within the District of Utah.

## THE PARTIES

5.      Plaintiff is an individual who, at all relevant times, was enrolled as a student at the University and was a member of the University's Division I football program.

6.      Defendant the University is a public collegiate university organized and existing under the laws of the State of Utah, and an instrumentality of the State of Utah.

7.      At all relevant times, the University owned, operated, and controlled the intercollegiate athletics program at issue in this action, including the football program, and received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act.

8.      Upon information and belief, Defendant Harlan is, and at all relevant times was, the Athletic Director of the University where, in that role, Harlan exercised supervisory authority and final policymaking responsibility over the University's athletics department, including the football program, coaching staff, scholarship administration, compliance functions, and policies governing student-athlete participation and welfare.

9.      Upon information and belief, Defendant Whittingham was the Head Football Coach of the University during all relevant times, during which, in that role, Whittingham exercised authority and control over football operations, coaching staff, player participation decisions, roster management, and recommendations concerning player retention and departure.

10.    Upon information and belief, Defendant Atuaia was the Running Backs Coach for the University's football program during all relevant times, during which, in that role, Atuaia exercised direct decision-making authority over Plaintiff's participation in practices, scrimmages, travel, and games.

11.    Upon information and belief, Defendant Greco is, and at all relevant times was, the Executive Senior Associate Athletic Director for Governance and Brand Strategy where, in that role, Greco exercised authority over athletics governance and compliance matters, including oversight responsibilities relevant to football operations, eligibility, and institutional compliance obligations.

12.    Upon information and belief, Defendant Prince is, and at all relevant times was, the Associate Athletic Director for Sport Administration and Student-Athlete Wellbeing where, in that role, Prince exercised responsibility and oversight with respect to student-athlete welfare, support services, and the institutional response to issues affecting student-athlete participation and wellbeing.

13.    Upon information and belief, Defendant Jentz is, and at all relevant times was, the Deputy Athletic Director and Chief Financial Officer for the University's athletics department where, in that role, Jentz exercised authority over athletics finances, including scholarship funding, budgeting, and financial decisions affecting student-athletes.

14.    Upon information and belief, Defendant C. Green is, and at all relevant times was, the Deputy Athletic Director and Chief Operating Officer of the University's athletics department where, in that role, C. Green exercised authority over athletics operations, administration, and the implementation of departmental policies and procedures.

4

15. Upon information and belief, at all relevant times, each individual Defendant acted under color of state law, within the scope of his or her employment and/or authority, and in concert with one another.

16. Upon information and belief, at all relevant times, the acts and omissions of the individual Defendants were undertaken pursuant to official policies, practices, customs, and/or decisions of the University, or were knowingly ratified, approved, or acquiesced in by supervisory officials with final policymaking authority.

## FACTUAL BACKGROUND

### A. Plaintiff's Recruitment, Scholarship, and Enrollment

17. Plaintiff was recruited by the University as a highly regarded Division I football prospect and accepted an offer to join the University's football program as a scholarship student-athlete commencing with the spring 2025 semester.

18. Prior to enrolling at the University, Plaintiff competed as a running back at the Division I college football level and was recruited by the University based on his demonstrated athletic ability and on-field performance.

19. Plaintiff enrolled at the University in reliance on the University's representations that he would be afforded equal access to athletic participation, coaching, educational opportunities, and the benefits associated with membership on the football team.

20. Plaintiff was awarded an athletic scholarship that covered tuition, housing, meals, and related educational expenses.

21. Plaintiff's ability to remain enrolled as a student at the University was directly dependent on the continuation of his athletic scholarship.

22.    At all relevant times, Plaintiff was academically eligible, in good standing, and progressing toward his degree.

23.    Plaintiff was not subject to any disciplinary action, academic sanction, or rules violation that would independently justify removal from the football program or termination of his scholarship.

### B. Plaintiff's Disability and Medical Clearance

24.    Plaintiff has Type 1 Diabetes, a chronic endocrine condition that substantially limits one or more major life activities, including endocrine function.

25.    Plaintiff's condition was known to the University and to the coaching staff, including Atuaia and Whittingham, throughout Plaintiff's recruitment, enrollment, and participation in the football program.

26.    Plaintiff managed his condition through continuous blood glucose monitoring and insulin administration.

27.    Plaintiff was regularly evaluated by athletic training and medical staff employed or retained by the University.

28.    At all relevant times, Plaintiff was medically cleared to participate in football activities.

29.    At no point during the relevant period was Plaintiff ever medically disqualified from participation in practices, scrimmages, or games by any athletic training or medical staff.

30.    At no point during the relevant period was any type of written medical restriction issued by a member of the athletic training or medical staff that prohibited Plaintiff from participating in football activities.

6

31.    At no point during the relevant period did the University adopt or otherwise enforce any policy requiring coaches to defer to medical clearance decisions when disability-related concerns were implicated.

32.    The University wholly failed to implement safeguards or oversight mechanisms to prevent coaches from substituting personal judgment for medical clearance in disability-related contexts.

**C. Disability Based Exclusion from Meaningful Participation in Football Activities**

33.    Despite at all relevant times being medically cleared to participate in the University's football program, Plaintiff was repeatedly denied access to meaningful participation in football activities by Atuaia.

34.    In denying Plaintiff access to meaningful participation in the University's football program, Atuaia exercised unilateral discretion to override medical clearance decisions based on his own fear and misconceptions regarding Plaintiff's Type 1 Diabetes.

35.    While Plaintiff was not excluded from all practices, he was routinely limited to non-competitive or observational participation.

36.    Plaintiff was regularly denied full-speed repetitions, evaluative opportunities, and meaningful integration into game-planning contexts.

37.    Plaintiff was also regularly denied access to scrimmages and competitive drills in which performance is assessed and film is generated.

38.    One such example occurred on or about August 15, 2025, when the University held a team scrimmage.

39. On that date, Plaintiff participated in preliminary drills but, despite being medically cleared, was denied access to participation in the scrimmage itself.

40. After the scrimmage, Atuaia stated that although trainers had indicated Plaintiff was "good to go," Atuaia was "scared" to play Plaintiff because Plaintiff is diabetic.

41. At this same time, Atuaia further acknowledged that the decision was not based on Plaintiff's talent, performance, or effort.

42. Atuaia's decision to exclude Plaintiff was based on fear, stereotypes, and misconceptions regarding Type 1 Diabetes, rather than any individualized medical judgment.

43. Non-disabled running backs were permitted to participate fully in the same scrimmage and similar evaluative contexts and activities.

44. Plaintiff's exclusion was discretionary, inconsistent, and not applied pursuant to any uniform or neutral policy.

45. Notwithstanding that Plaintiff dressed for one game against Brigham Young University and did not play, Plaintiff was excluded from all other team travel and game-day participation during the 2025 Division I college football season, including being entirely prohibited from traveling on the team bus or staying with the team at the hotel prior to games.

46. These exclusions deprived Plaintiff of opportunities to compete, to be evaluated, and to generate game film.

47. At all relevant times, the University failed to intervene or correct Atuaia's disability-based exclusionary decisions.

8

48.    Plaintiff's exclusion was not limited to a single incident but instead was a recurring pattern throughout the entire 2025 season Division I college football season.

49.    Plaintiff was consistently denied competitive repetitions and evaluative opportunities afforded to non-disabled teammates.

50.    These decisions materially affected Plaintiff's standing within the University's football program and his ability to demonstrate his abilities to coaches, evaluators, and potential future programs.

51.    The cumulative effect of these exclusions was to marginalize Plaintiff within the University's football program and effectively remove him from meaningful competition.

**D.  Directive to Leave the University's Football Program**

52.    On or about December 1, 2025, Atuaia informed Plaintiff that he did not believe Plaintiff could continue in the University's football program.

53.    Atuaia stated that he could not "push" Plaintiff because of Plaintiff's diabetes.

54.    Atuaia further directed Plaintiff to enter the NCAA transfer portal to find another university at which to play.

55.    Atuaia's directive was expressly tied to Plaintiff's disability and not to performance, discipline, or academic standing.

56.    Whittingham knew or should have known of Atuaia's directive and the disability-based rationale for it.

57.    Harlan knew or should have known of Plaintiff's exclusion from participation and the circumstances under which Plaintiff was directed to leave the program.

9

58. No corrective action was ever taken by the University or its senior athletics leadership.

### E. Scholarship Termination and Resulting Denial of Education

59. Following Plaintiff's removal from the football program, Plaintiff's athletic scholarship was terminated or not renewed at the end of the calendar year.

60. The scholarship termination did not coincide with the end of the academic year.

61. Plaintiff was provided no meaningful notice, explanation, or opportunity to contest the termination.

62. Plaintiff was not offered any alternative accommodation or interim financial support that would have allowed him to remain enrolled.

63. Plaintiff's scholarship termination occurred abruptly and without any individualized assessment of Plaintiff's academic status, financial circumstances, or ability to continue enrollment absent athletic aid.

64. Defendants knew or should have known that terminating Plaintiff's scholarship at the end of the calendar year would immediately and foreseeably result in Plaintiff's withdrawal from the University.

65. Defendants nevertheless proceeded with the termination of Plaintiff's scholarship without providing Plaintiff with notice of any appeal rights or an opportunity to seek alternative funding or accommodations.

66. As a direct result of the scholarship termination, Plaintiff was forced to leave school at the end of the calendar year.

67. Plaintiff is currently not enrolled at the University or any other institution.

68.    Plaintiff desired and intended to continue his education uninterrupted but for Defendants' actions.

69.    Defendants' conduct therefore resulted in the denial of Plaintiff's access to education.

70.    As a direct result of Defendants' conduct, Plaintiff lost the financial means to continue his education at the University.

71.    Plaintiff incurred and continues to incur educational disruption, including loss of academic continuity, delayed degree progress, and the need to seek alternative educational arrangements under materially worse conditions.

72.    These harms flowed directly from the termination of Plaintiff's scholarship and his forced withdrawal from enrollment at the University.

**F.  Transfer Portal Harm and Impact to Plaintiff's Football Career**

73.    Plaintiff entered the NCAA transfer portal in good faith following Atuaia's directive.

74.    Because Plaintiff had been excluded from scrimmages, travel, and games, Plaintiff lacked meaningful recent game film.

75.    Game film is essential for evaluation and recruitment by other Division I college football programs.

76.    As a result of Defendants' conduct, Plaintiff has received no interest from programs of comparable stature, including schools in major conferences such as the Big Ten, Big 12, SEC, or ACC.

77.    Plaintiff's exclusion from meaningful participation in football activities and his exclusion from future participation in the University's football program further impaired

his ability to benefit from opportunities customarily available to Division I student-athletes, including opportunities tied to athletic visibility, evaluation, and participation.

78.    Plaintiff's diminished prospects were a direct and foreseeable consequence of Defendants' disability-based exclusion from the University's football activities.

### G. Emotional and Psychological Harm

79.    As a result of Defendants' actions, Plaintiff has suffered severe emotional distress.

80.    As a result of Defendants' actions, Plaintiff has experienced anxiety, depression, panic episodes, and mental breakdowns.

81.    As a result of Defendants' actions, Plaintiff has experienced difficulty sleeping, concentrating, and maintaining emotional stability.

82.    Plaintiff's emotional distress was exacerbated by the sudden loss of his education, athletic identity, and future career prospects.

83.    Defendants knew or should have known that removing a student-athlete from his Division I college football program, terminating his associated scholarship, and forcing his withdrawal from school solely as a result of having Type 1 Diabetes would cause severe psychological harm.

84.    Defendants nevertheless proceeded with deliberate indifference to the emotional and psychological consequences of their actions.

### H. Notice and Deliberate Indifference

85.    Defendants were aware that Plaintiff had Type 1 Diabetes, and that he was medically cleared and capable of participating in the University's football activities.

12

86.     Defendants were aware that Plaintiff's exclusion and removal were based on his Type 1 Diabetes.

87.     Despite this knowledge, Defendants failed to take corrective action.

88.     Defendants' inaction constituted deliberate indifference to Plaintiff's federally protected rights.

**AS AND FOR A FIRST CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (142 U.S.C. § 12101, et seq.)**
(against defendant the University)

89.     Plaintiff incorporates by reference and repeats and realleges the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

90.     Title II of the Americans with Disabilities Act (the "ADA") provides that no individual with a qualified disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity.

91.     At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

92.     At all relevant times, Defendant the University was a "public entity" within the meaning of the ADA.

93.     The University's intercollegiate athletics program, including its Division I football program, constituted a service, program, or activity within the meaning of Title II of the ADA.

94.     Plaintiff was otherwise qualified to participate in the University's football program and related educational programs and activities.

95. Plaintiff was excluded from meaningful participation in the University's football activities, excluded from future participation in the University's football program, and denied the benefits of educational programs and services by reason of his disability.

96. Plaintiff's exclusion was not based on individualized medical judgment, legitimate safety requirements, or neutral eligibility criteria, but on fear, stereotypes, and misconceptions regarding Plaintiff's disability.

97. The University failed to ensure that participation decisions were made in a nondiscriminatory manner consistent with medical clearance and reasonable modifications.

98. As a direct and proximate result of the University's violations of Title II of the ADA, Plaintiff suffered damages, including denial of access to education, loss of athletic opportunity, and emotional distress.

99. The University's conduct violated Title II of the ADA.

100. Plaintiff is entitled to compensatory damages in an amount to be determined at trial, together with interest, costs, reasonable attorneys' fees, and such other relief as the Court deems just and proper.

**AS AND FOR A SECOND CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE**
**REHABILITATION ACT OF 1973 (29 U.S.C. § 794)**
**(against defendant the University)**

101. Plaintiff incorporates by reference and repeats and realleges the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

102. Section 504 of the Rehabilitation Act of 1973 ("Section 504") provides that no otherwise qualified individual with a disability shall, solely by reason of such disability,

be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance.

103.   At all relevant times, the University received federal financial assistance within the meaning of Section 504.

104.   Plaintiff was otherwise qualified to participate in the University's football program and educational programs.

105.   Plaintiff was excluded from participation and denied benefits solely by reason of his disability.

106.   The University had actual knowledge of Plaintiff's disability and of the disability-based nature of Plaintiff's exclusion.

107.   The University failed to take corrective action and acted with deliberate indifference to Plaintiff's federally protected rights.

108.   The University's conduct violated Section 504.

109.

110.   As a direct and proximate result of the University's violations of Section 504, Plaintiff suffered economic loss, denial of educational access, loss of athletic opportunity, and emotional distress.

111.   Plaintiff is entitled to compensatory damages in an amount to be determined at trial, together with interest, costs, reasonable attorneys' fees, and such other relief as the Court deems just and proper.

112.   The Plaintiff is entitled to all remedies that are generally available in disputes of contract.[1] Therefore, the Plaintiff is entitled to any other loss, including

---

[1] (See *Cummings v. Premier Rehab Keller,* PLLC, 142 S. Ct. 1562 (2022), reh'g denied, 142 S. Ct. 2853 (2022)

incidental or consequential loss, caused by the breach less the cost avoided.

**AS AND FOR A THIRD CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE EQUAL**
**PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)**
**(against defendants Harlan, Whittingham, Atuaia, Greco, Prince, Jentz,**
**and C. Green, individually)**

113. Plaintiff incorporates by reference and repeats and realleges the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

114. At all relevant times, defendants Harlan, Whittingham, Atuaia, Greco, Prince, Jentz, and C. Green (collectively, the "Individual Defendants") acted under color of state law.

115. The Equal Protection Clause of the Fourteenth Amendment prohibits intentional discrimination based on disability.

116. Plaintiff was intentionally treated differently from similarly situated non-disabled student-athletes.

117. Plaintiff's exclusion from meaningful participation and from future participation in the University's football program was based on his disability.

118. The Individual Defendants knew that Plaintiff was medically cleared and capable of participation in the University's football program.

119. The Individual Defendants nevertheless participated in, approved, ratified, or acquiesced in Plaintiff's disability-based exclusion from the University's football program.

120. The discrimination against Plaintiff was not rationally related to any legitimate governmental interest.

121.    As a direct and proximate result of the Individual Defendants' actions, Plaintiff suffered damages, including denial of educational access, loss of athletic opportunity, emotional distress, and reputational harm.

122.    The Individual Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for violating Plaintiff's right to equal protection of the laws.

123.    Plaintiff is entitled to compensatory and punitive damages in amounts to be determined at trial, together with interest, costs, reasonable attorneys' fees, and such other relief as the Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF PLAINTIFF'S PROCEDURAL**
**DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983**
**(against defendants Harlan, Whittingham, Atuaia, Greco, Prince, Jentz,**
**and C. Green, individually)**

124.    Plaintiff incorporates by reference and repeats and realleges the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

125.    Plaintiff possessed constitutionally protected property and liberty interests, including continued access to education and scholarship-supported enrollment.

126.    The Individual Defendants deprived Plaintiff of these interests by excluding him from the University's football program and causing the loss of his scholarship.

127.    Plaintiff was provided no meaningful notice, explanation, or opportunity to be heard prior to the deprivation.

128.    The deprivation was arbitrary, discriminatory, and not the result of any neutral or established procedure.

129.    As a direct and proximate result of the Individual Defendants' conduct, Plaintiff suffered damages.

17

130.    The Individual Defendants violated Plaintiff's right to procedural due process under the Fourteenth Amendment.

131.    Plaintiff is entitled to compensatory and punitive damages in amounts to be determined at trial, together with interest, costs, reasonable attorneys' fees, and such other relief as the Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**DECLARATORY RELIEF (28 U.S.C. §§ 2201-2202)**
**(against defendants Harlan, Whittingham, Atuaia, Greco, Prince, Jentz,**
**and C. Green, in their official capacities)**

132.    Plaintiff incorporates by reference and repeats and realleges the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

133.    An actual and justiciable controversy exists between Plaintiff and Defendants concerning Plaintiff's rights under federal law.

134.    Plaintiff seeks a judgment declaring that:

a.  The University's exclusion of Plaintiff from meaningful participation in the University's football program on the basis of his disability violated Title II of the Americans with Disabilities Act;

b.  The University's conduct violated Section 504 of the Rehabilitation Act by excluding Plaintiff from participation in, and denying him the benefits of, a federally funded program solely by reason of his disability;

c.  The Individual Defendants' actions constituted intentional disability discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment;

d.  The Individual Defendants deprived Plaintiff of his scholarship and access to education without notice or an opportunity to be heard, in

violation of Plaintiff's procedural due process rights under the Fourteenth Amendment; and

e. Defendants' actions and omissions were unlawful and in violation of Plaintiff's federally protected rights.

135. Such declaratory relief is necessary and appropriate to define and adjudicate the parties' respective rights and legal obligations under federal law, to clarify that Plaintiff's exclusion from participation and loss of educational access were unlawful, and to remedy the continuing adverse legal and practical consequences of Defendants' conduct.

### AS AND FOR A SIXTH CAUSE OF ACTION
### INJUNCTIVE RELIEF (42 U.S.C. § 1983)
**(against defendants Harlan, Whittingham, Atuaia, Greco, Prince, Jentz, and C. Green, in their official capacities)**

136. Plaintiff incorporates by reference and repeats and realleges the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

137. Plaintiff seeks injunctive relief requiring the Individual Defendants, in their official capacities, to:

a. Cease engaging in disability-based exclusion from athletic and educational programs;

b. Implement and enforce policies ensuring that student-athletes with disabilities are not excluded from participation based on fear, stereotypes, or non-medical considerations;

c. Ensure that coaching staff defer to medical clearance determinations in disability-related participation decisions;

d. Provide appropriate training to athletics personnel regarding compliance with the ADA, the Rehabilitation Act, and the Constitution; and

e. Take such other actions as are necessary to prevent future violations of federal law.

138. Such injunctive relief is necessary to enjoin ongoing and continuing violations of federal law and is authorized under *Ex parte Young*, 209 U.S. 123 (1908).

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

A. On the First Cause of Action (Violation of Title II of the Americans with Disabilities Act), against the University, for compensatory damages in an amount to be determined at trial, together with interest, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 12205, and such other and further relief as the Court deems just and proper;

B. On the Second Cause of Action (Violation of Section 504 of the Rehabilitation Act), against the University, for compensatory damages in an amount to be determined at trial, together with interest, costs, reasonable attorneys' fees pursuant to 29 U.S.C. § 794a, and such other and further relief as the Court deems just and proper;

C. On the Third Cause of Action (Disability Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1983), against the Individual Defendants, for compensatory damages and punitive damages in amounts to be determined at trial, together with interest, costs, reasonable

20

attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper;

D. On the Fourth Cause of Action (Violation of Plaintiff's Procedural Due Process Rights under the Fourteenth Amendment, 42 U.S.C. § 1983), against the Individual Defendants, for compensatory damages and punitive damages in amounts to be determined at trial, together with interest, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper;

E. On the Fifth Cause of Action (Declaratory Relief pursuant to 28 U.S.C. §§ 2201–2202), for a judgment declaring that:

   i. The University's exclusion of Plaintiff from meaningful participation in the University's football program on the basis of his disability violated Title II of the Americans with Disabilities Act;

   ii. The University's conduct violated Section 504 of the Rehabilitation Act by excluding Plaintiff from participation in, and denying him the benefits of, a federally funded program solely by reason of his disability;

   iii. The Individual Defendants' actions constituted intentional disability discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment; and

   iv. The Individual Defendants deprived Plaintiff of his scholarship and access to education without notice or an opportunity to be heard, in violation of Plaintiff's procedural due process rights under the Fourteenth Amendment.

F.  On the Sixth Cause of Action (Injunctive Relief), against the Individual Defendants in their official capacities, for an order:

    i.  Enjoining the Individual Defendants from engaging in disability-based exclusion from athletic and educational programs;

    ii.  Requiring the Individual Defendants to implement and enforce policies ensuring compliance with the Americans with Disabilities Act, the Rehabilitation Act, and the Constitution;

    iii.  Requiring that coaching and athletics staff at the University defer to medical clearance determinations from qualified medical professionals in disability-related participation decisions;

    iv.  Requiring appropriate training of athletics personnel at the University regarding nondiscrimination obligations under federal law; and

    v.  Granting such other injunctive relief as the Court deems just and proper.

G.  For pre-judgment and post-judgment interest, as permitted by law, together with costs, reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

**<u>A JURY TRIAL IS HEREBY DEMANDED</u>**

Dated: February 5, 2026

**ALLEBEST LAW GROUP PLLC**

By: */s/: Jared Allebest*
Jared M. Allebest
212 East Crossroads Blvd #207
Saratoga Springs, Utah 84045
Phone: 801-900-3858
jared@allebest.com

22

Daniel O. Phelan
**PHELAN LAW, P.C.**
Daniel O. Phelan
1177 Avenue of the Americas, 5th Floor
New York, New York 10036
Phone: 212-606-4228
dphelan@phelan-law.com
*Pro Hac Vice Application Forthcoming*

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2026, I have made service of the foregoing on the party/ies listed below via Hand Delivery and/or Electronically via USDC CM/ECF system.

STEVEN A. COMBE
Assistant Utah Attorney General
Deputy Director, Litigation Division
350 North State Street, Suite 230
Salt Lake City, UT 84114

DATED this 5th February 2026
/s/ Jared Allebest
Allebest Law Group PLLC
Attorney for Plaintiff

**VERIFICATION**

STATE OF CALIFORNIA    )
                       ) ss.:
COUNTY OF *Sacramento* )


      Devin Green, being duly sworn, deposes and says:

      I am the plaintiff in the within action.  I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters, I believe them to be true.


                                 _____
                                   DEVIN GREEN


Sworn to before me this
2 day of February, 2026

_____
Notary Public

MARISELA MAYORGA
Notary Public - California
Sacramento County
Commission # 2486475
My Comm. Expires Apr 9, 2028